Howard McKINSTRY, Plaintiff,

v.

**MARINE ENGINEERS BENEFICIAL
ASSOCIATION, AFL–CIO,
et al., Defendants.**

**No. C–72–1445 RHS.**

United States District Court,
N. D. California.

April 8, 1974.

William H. Stephens, Sausalito, Cal., for plaintiff.

Dennis T. Daniels, James E. Miller, McCarthy, Johnson & Miller, San Francisco, Cal., for defendants.

OPINION

SCHNACKE, District Judge.

This action, submitted on agreed facts, is one to recover severance pay allegedly accruing to plaintiff as a consequence of the termination of his employment by Matson Navigation Company as a result of a reduction by Matson of its scope of operations. Plaintiff was a port engineer employed by Matson for some years.

It is conceded that plaintiff's right to recovery, if any, is founded upon a collective bargaining agreement between the Marine Engineers and Pacific Maritime Association, dated July 18, 1969 (the "Port Engineers Agreement"), which cross-refers to another agreement, dated June 16, 1969, between the Marine Engineers and PMA, (the "Offshore Engineers Agreement") covering the offshore engineers, which, in turn, refers to the so-called "Shipman Award", being an award of Mitchell M. Shipman, as arbitrator, dated July 19, 1959.

The fundamental question is whether plaintiff is entitled to direct payment of

severance pay without having retired from the industry, or agreed to do so.

The earliest of these documents, chronologically, is the Shipman Award, which deals generally with the question of severance pay for engineers who have lost their employment owing to the transfer of a vessel to foreign registry. Mr. Shipman decided that in such cases severance pay should be awarded and set out a basis for computing the amount of severance pay, depending upon the length of service of the engineer with the employer company. The award contains no reference whatever to the retirement of the engineer from the industry.

The element of retirement is first introduced in the Offshore Agreement, which provides in § 36(d) that the Shipman Award on severance shall be incorporated in and made a part of the Agreement. The Union and the Company agreed to negotiate a severance plan which should incorporate the provision, among others, for payments to be made to a fund and when such plan is negotiated, it shall be a substitute for the Shipman Award. In a separate paragraph, the Agreement states:

> "When severance wages are due they shall be paid by the company into the vacation plan to be held for the individuals who would be entitled to the same if they therupon [sic] agree to retire from the industry. If any individual entitled to severance wages does not agree to retire from the industry, the severance wages due on his account shall be paid by the vacation plan into the special fund in the pension plan."

Next, we come to the Port Engineers Agreement upon which plaintiff's claim is directly founded. That agreement provides in § 10(A):

> "In the event that the employment of a Port Engineer is terminated by the Company for any reason other than disability or just cause, or the refusal of the Port Engineer to accept a transfer to a comparable Port engineer's job away from a regular posi-

tion which is being permanently eliminated from the Employer's operation, such Port Engineer shall be entitled to severance pay for service as Port Engineer with the employer and according to the schedule of severance benefits set forth in Section 36 of the MEBA–PMA Offshore Licensed Engineers Agreement covering the period June 16, 1969 through June 16, 1972."

The question, thus, is whether the last of these agreements incorporates by reference the compulsory retirement provision of the Offshore Agreement. If so, plaintiff having refused to retire, defendants are entitled to prevail; if it does not, plaintiff is entitled to the relief sought.

■ We conclude that plaintiff is entitled to judgment.

I

The agreements here, like so many collective bargaining agreements, are not models of draftsmanship. A key point is the reference in the Port Engineers Agreement to the *"schedule"* of severance benefits contained in the Offshore Agreement. In fact, the Offshore Agreement itself contains nothing that would in common parlance be called a "schedule". Moreover, it if had been the intention that Port Engineers should get severance pay upon the same terms and conditions as Offshore Engineers, as defendants contend, it would have been very easy for the parties to have said that severance benefits should be payable *"in accordance with the provisions of Section 36 . . . ",* in which case there could be little question that the retirement provision is incorporated by this reference.

The only thing in any of the documents resembling a "schedule" is that appearing at the end of the Shipman Award, in which the computation of severance pay is set forth in terms of length of service; as noted above, the Offshore Agreement incorporates the Shipman Award by reference. Thus, we can give common meaning to the word

"schedule"[1] in the Port Engineers Agreement if we cut through the Offshore Engineers Agreement and read the Port Engineers Agreement to say "in accordance with the schedule set forth in the Shipman Award". We cannot otherwise give any commonsense meaning to the word "schedule". We certainly cannot construe it to refer to a limitation of benefits based upon retirement from the industry.[2]

## II

The practical construction of the parties has apparently been to require retirement of Port Engineers as a condition of direct payment of severance pay, although the evidence on this point is rather sketchy and it does not seem to have arisen in a great many cases. In fact, it does not make a particle of financial difference to the employer what happens to the money. He is obligated in any event to pay a sum to the union, which then has the problem of how it should be handled.

What resulted from the union's efforts is a misalliance of three documents that do not match up well together. In this situation, we resolve any ambiguities against the union, which drafted the document upon which plaintiff's claim is founded and over which he obviously had no control. It seems to the Court that unions, acting as agents and fiduciaries for their members, should be especially charged with care in the preparation of collective bargaining agreements which may mean many hundreds of thousands of dollars to their members.

In a situation like this, we have fundamentally a dispute between a union and one of its members over the terms of a collective bargaining agreement. The agreement was, on the employee side, drafted by the union and approved by it. As a practical matter, the members such as plaintiff have no say in the specifics of the agreement or hand in drafting them.

The agreed facts are found accordingly; the conclusions of law are as stated above.

Judgment will be entered for plaintiff. Plaintiff's counsel shall prepare and submit a form of judgment in the manner prescribed in L.R. 123(d).

---

1. Defendants are critical of plaintiff's reliance upon "dictionary definitions". But granted that "schedule" is not here used as a word of art, defendants suggest no better source for ascertaining the accepted meaning of words. In this case, we do not even need a dictionary.

2. It is true that the word, more commonly in British usage, may mean an attachment, exhibit or appendix to a document. Nothing here involved fits this definition.